**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>Avrumi Lubin, pro se<br>Defendant, individually<br>605 West 42nd Street<br>New York, New York 10036<br>(718) 570-3796<br>josh@tetonfunding.com | Case No.: 26-17342 (EJO)<br>Chapter: 11<br>Adv. Pro. Nos.: 26-01315 (EJO), 26-01339 (EJO) and 26-01435 (EJO)<br>Hearing Date: December 3, 2026, at 10:00 a.m.<br>Judge: Hon. Eamonn J. O'Hagan |
| In re:<br>AVRUMI LUBIN a/k/a Josh Lubin,<br>Debtor. | |
| FVP SERVICING, LLC; FVP OPPORTUNITY FUND III, LP; and FVP INVESTMENTS LLC, *Plaintiffs*,<br>v. AVRUMI LUBIN, *Defendant.* | Adv. Pro. No. 26-01315 (EJO) |
| FRANKLIN CAPITAL GROUP, LLC and FRANKLIN CAPITAL FUNDING, LLC, *Plaintiffs*,<br>v. AVRUMI LUBIN, *Defendant.* | Adv. Pro. No. 26-01339 (EJO) |
| NICOLE TESTA MEHDIPOUR, as Chapter 7 Trustee of Excell Auto Group, Inc., *Plaintiff*,<br>v. AVRUMI LUBIN, *Defendant.* | Adv. Pro. No. 26-01435 (EJO) |

# CERTIFICATION OF AVRUMI LUBIN IN SUPPORT OF MOTION TO CONSOLIDATE ADVERSARY PROCEEDINGS

I, Avrumi Lubin, certify as follows:

1. I am the debtor in Chapter 11 Case No. 26-17342 and the only defendant in the three adversary proceedings named in the caption. I make this certification from personal knowledge and from the court records cited below. I submit it individually; I do not act as attorney for any company. Where I describe another party's allegations or statements, I describe what the record says. I do not adopt it.

## The three proceedings

2. FVP Servicing, LLC, FVP Opportunity Fund III, LP and FVP Investments LLC (together, “FVP”) filed Adv. No. 26-01315 on July 2, 2026 (ECF No. 1, the “FVP Complaint”). Franklin Capital Group, LLC and Franklin Capital Funding, LLC (together, “Franklin”) filed Adv. No. 26-01339 on July 22, 2026 (ECF No. 1, the “Franklin Complaint”). Nicole

Testa Mehdipour, as Chapter 7 Trustee of Excell Auto Group, Inc. (the "Excell Trustee"), filed Adv. No. 26-01435 on September 21, 2026 (ECF No. 1, the "Excell Complaint").

3. All three proceedings are before this Court. Pretrial conferences are scheduled for December 3, 2026: at 10:00 a.m. in Adv. Nos. 26-01315 and 26-01339, and at 2:00 p.m. in Adv. No. 26-01435. To my knowledge, no scheduling order has been entered in any of them.

4. I filed answers in Adv. No. 26-01315 (ECF No. 14) and Adv. No. 26-01339 (ECF No. 14). On November 9, 2026, I moved to extend my time to amend those answers (Adv. No. 26-01315, ECF No. 16; Adv. No. 26-01339, ECF No. 15). In Adv. No. 26-01315, the November 10, 2026 order (ECF No. 19) is docketed as an order denying my application to shorten time, and the docket entry lists a hearing on December 3, 2026; the signed form order, however, identifies the extension motion and states that "the aforesaid motion or application is denied." I respectfully ask the Court to confirm whether my extension motions in both proceedings remain pending and which amendment dates apply. My motion to extend my time to respond to the Excell Complaint (Adv. No. 26-01435, ECF No. 3) was set for hearing on November 12, 2026. I do not withdraw any of those requests by this motion.

**The overlap among the claims**

5. The FVP Complaint and the Franklin Complaint each ask this Court to except from discharge, under 11 U.S.C. § 523(a)(2)(A) and (a)(6), a judgment entered in the same Broward County, Florida action, No. CACE-22-005125 (the "Florida Action"), on the same jury verdict returned October 1, 2025, after the same trial that began September 24, 2025. (FVP Compl. ¶¶ 1, 6–8; Franklin Compl. ¶¶ 1, 7–10.) Both argue issue preclusion, cite the same four cases, and say they are "[a]pplying New Jersey issue-preclusion law." (FVP Compl. ¶ 14; Franklin Compl. ¶ 17.) Paragraphs 3, 4 and 13 of the FVP Complaint are the same as paragraphs 4, 5 and 16 of the Franklin Complaint, except for the party names.

6. The Excell Complaint pleads § 523(a)(2)(A) and (a)(6) and objects to my discharge under § 727. It concerns the same Spin Capital, LLC ("Spin"), Hi Bar Capital, LLC ("Hi Bar") and Excell Auto Group, Inc. ("Excell") transactions. It alleges that, minutes after Hi Bar wired $2,114,312.50 back to Spin on November 1, 2021, I "executed an Assignment Document transferring Spin's obligations and claims to a third-party, Wing Lake, who funded $6 million to Excell." (Excell Compl. ¶¶ 50–54.) It also pleads Hi Bar's October 2021 agreement with Excell "along with 14 non-debtor entities" (¶ 44) and later settlements that increased the balance claimed by Hi Bar (¶¶ 56–58). It describes the Excell Trustee's adversary proceeding against me in Florida, *Mehdipour v. Hi Bar Capital, LLC*, Adv. No. 23-01132-EPK (Bankr. S.D. Fla.), and the trial held there in January and February 2026. (¶¶ 6, 59.)

7. Franklin's fraud count in the Florida Action, Count 7, is pleaded in its Second Amended Counterclaims and Crossclaims (Florida Action, Filing # 209669232, the "Franklin Florida Pleading"), which defines Excell as "the Debtor." (¶ 6.) Count 7 alleges: "Through Franklin Assignment Document and other communications, Spin and Lubin falsely alleged the Spin debt owing by Excell had been satisfied," and "[t]he claims were made to induce the reliance of Franklin to issue a loan to Excell." (¶¶ 274, 276.) The same pleading describes "a $6,000,000.00 loan to refinance the Debtor's outstanding MCA loans" and the "Franklin Assignment Document." (¶¶ 66–67.)

8. FVP's Fourth Amended Complaint in the Florida Action (Filing # 207710056, the "FVP Florida Pleading") defines Excell as "EAG." It alleges that a December 19, 2021 settlement agreement "between Hi Bar, Zankl, EAG, and the Karma Entities" "[i]ncreased the amount due Hi Bar." (¶ 133.) The Excell Complaint pleads a Hi Bar settlement with Excell that increased the balance claimed. (Excell Compl. ¶ 56.)

9. The claims are related but not identical. FVP and Franklin each assert their own judgment debt: the FVP Complaint describes a judgment of $7,500,000 in principal on Count I, plus other amounts; the Franklin Complaint describes a judgment of $6,000,000 on Counts 7, 9 and 10. (FVP Compl. ¶ 10; Franklin Compl. ¶ 12.) The Excell Trustee asserts a debt that she says is owed to Excell's estate, and she adds objections to discharge under § 727. I dispute all three plaintiffs' claims and the effect they assert for the Florida judgments.

**Agreements among the plaintiffs**

10. Exhibit A is a true copy of the signed Common Interest Agreement, "effective as of March 7, 2023," between Franklin Capital Funding, LLC and the Excell Trustee. The copy was turned over to me and is in my records. To my knowledge, no protective order or confidentiality order governs my copy. I attach all four pages.

11. The agreement recites that "the Trustee and Franklin each asserts cause of action against Hi Bar Capital, LLC and Spin Capital, LLC, and their respective principals, agent, members, officers, directors, and employees" arising from or relating to Excell and its bankruptcy case (the "Claims"), and that "the Parties share an interest in the prosecution of the Claims." (Ex. A at 1.) It covers sharing information about prosecuting the Claims, including "factual and legal analyses" and "legal strategies," and states that "all sharing and pooling of information pursuant to this Agreement will be done within the context of and in furtherance of the Parties' common goal and effort in prosecuting the Claims." (Id. ¶¶ 3–4.) It also states that it does not affect each party's separate representation (¶ 3), that participation is "neither an endorsement of, nor an authorization to control, strategy or decisions of other participating counsels' clients" (¶ 12), that it creates no attorney-client relationship (¶ 15), and that it is not an admission of liability (¶ 16). It is signed by

Bradley Shraiberg, Esq., as counsel for Franklin Capital Funding, LLC, and by Alan Crane, Esq., as counsel for the Excell Trustee. (Id. at 4.) I do not offer the agreement as proof of wrongdoing, and I do not ask the Court to decide any privilege question about communications made under it.

12. Exhibit B contains the notice of filing, the title page, pages 7 through 9 and the reporter's certificate of the transcript of the April 22, 2022 hearing in the Florida Action, as filed there on May 4, 2022 (Filing # 148965863). Counsel for the Excell Trustee and the Excell Trustee appeared. (Ex. B, Tr. 7:1–6.) FVP's counsel, Jerrell A. Breslin, Esq., told the court: "I represent the FVP Plaintiffs. . . . We have entered into an agreement with the trustee bankruptcy, the Excell Auto Group bankruptcy for the trust to do everything that we would ask Your Honor appoint a receiver to do." (Id. 8:21–25.) He said the trustee "has agreed to undertake that action and collect and safeguard the vehicles," and FVP withdrew its receiver motion without prejudice. (Id. 9:1–11.)

13. Exhibit C contains pages 1, 2, 25, 26, 44, 45 and 139 of the transcript of the August 13, 2025 hearing in the Florida Action. Franklin's counsel appeared. (Ex. C, Tr. 2:19–20.) Mr. Breslin told the court:

(a) "Judge, the agreement is not confidential." (Id. 25:8–9.)

(b) "[T]he settlement agreement is, 100 percent of the money in the bankruptcy court is going to the FVP parties." (Id. 25:23–25.)

(c) Asked "what does Franklin and Hi Bar get out of it?," he answered: "Franklin, we have a separate agreement with Franklin, and they share the FVP proceeds, and what Hi Bar is getting is there's a release of claims against the individual members." (Id. 26:1–6.) Asked about Franklin again, he said: "Franklin gets its share of the bankruptcy proceeds pursuant to a separate agreement with FVP." (Id. 26:14–18.)

(d) "Judge, the Franklin parties and FVP have a common interest agreement, and in that common interest agreement is a blanket agreement. So that would apply to any of these funds." (Id. 44:21–24.) Asked whether it was confidential, he answered: "Well, it's stated as confidential. No one has ever moved to produce it." The court said: "I would defer that one for another day then." (Id. 45:1–5.)

These statements do not show the final allocation of any funds or the amounts any plaintiff actually received.

14. The settlement agreement among the "FVP Parties," the "Franklin Parties" and the "Hi Bar Parties" is on this Court's docket in my Chapter 11 case. (Case No. 26-17342, ECF No. 44-4, at 104–115 of 117.) It provides that the Hi Bar Parties "shall stipulate that the FVP

Parties and Franklin Parties have the right to receive the Bankruptcy Court Registry Deposit, upon such terms as may be separately agreed to by the FVP Parties and Franklin Parties" (¶ 4(b)(1), at 106); that the deposit "shall be released to the FVP Parties subject to any other agreements between the FVP Parties and Franklin Parties regarding the division of the Bankruptcy Court Registry Deposit between such Parties" (¶ 5, at 106); that "both the FVP Parties and Franklin Parties shall prosecute all operative claims in the State Court Litigation against Hi Bar, as a necessary party of interest, in order to afford complete relief so as to pierce the corporate veil of Hi Bar to seek judgments against Lubin, Spin and Getter" (¶ 9(a), at 108); and that other agreements between the FVP Parties and the Franklin Parties "regarding the subject matter of this Settlement Agreement, including the division of the Bankruptcy Court Registry Deposit," remain "in full force and effect" (¶ 15, at 111).

15. Exhibit D is a true copy of the August 27, 2025 order in *In re Auto Wholesale of Boca, LLC*, No. 22-15627-EPK (Bankr. S.D. Fla.), ECF No. 965. The movants were Franklin Capital Funding, LLC, Franklin Capital Group, LLC, Franklin Capital Management, LLC, the three FVP entities and Hi Bar. (Ex. D at 1–2.) Paragraph 2 directs the Clerk "to disburse the Net Proceeds currently held in the registry of the Court, in the amount of $2,107,548.61 plus accrued interest (if any), to the order of the law firm Schwartz Breslin PLLC, to be further disbursed according to the settlement approved by the State Court Order." (Id. ¶ 2.) The order also recites the Florida court's ruling that neither I nor my affiliated entities have rights to those proceeds. (Id. at 2.) I disagree with that ruling, but I do not ask this Court to revisit it. The order directs a disbursement. It does not show what any plaintiff actually received, or how any amount was allocated or credited.

16. Neither the FVP Complaint nor the Franklin Complaint states whether any part of those funds, or any other recovery, has been credited to the debt it asks this Court to except from discharge. Both plaintiffs' Florida pleadings measure damages net of other recoveries. FVP: "The FVP Parties' damages are the amount of the FVP Loan plus costs and prejudgment interest minus any recovery from joint tortfeasors." (FVP Florida Pleading ¶ 311.) Franklin: "The damages suffered by Franklin include the amount of its loan, plus costs and prejudgment interest and minus any recoveries from joint tortfeasors or obligors." (Franklin Florida Pleading ¶ 281.) I ask for an accurate account of what each plaintiff received and credited. I do not assume that every receipt reduces each asserted debt in the same way.

**Common proof and the burden of separate proceedings**

17. From my knowledge of these transactions, the same documents and many of the same witnesses will be needed in all three proceedings, including me; Scott Zankl and Kristen

Zankl; Yisroel Herbst; the records of Spin, Hi Bar, Excell and its affiliates, FVP and Franklin; and the Florida trial record, verdict and judgments.

18. I represent myself. Without coordination I expect separate document requests, interrogatories and depositions about the same transactions in three proceedings, three pretrial schedules and possibly three trials. Repeated examinations on the same subjects would multiply the work for me, the plaintiffs and the Court, and could lead to inconsistent rulings.

19. I ask that common issues be handled together and that each proceeding's distinct issues stay separate. This motion does not itself ask for a stay. I have separately moved for a finite stay of merits proceedings and for coordinated pleading dates.

20. By this motion I do not concede any allegation of any complaint, alter-ego status, the effectiveness or scope of any assignment, or the ownership of any claim, and I do not waive any defense or objection, including my defenses to the § 727 counts and my positions concerning the effect of the Florida and Michigan rulings.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on November 11, 2026.

Avrumi Lubin, individually and pro se
605 West 42nd Street, New York, New York 10036
(718) 570-3796 | josh@tetonfunding.com

**Exhibits to this Certification**

| Exhibit | Description | Pages |
|---|---|---|
| A | Common Interest Agreement, effective as of March 7, 2023, between Franklin Capital Funding, LLC and Nicole Testa Mehdipour, as Chapter 7 Trustee of Excell Auto Group, Inc. | 4 |
| B | Transcript excerpts, April 22, 2022 hearing, Florida Action No. CACE-22-005125, as filed May 4, 2022 (Filing # 148965863): notice of filing, title page, pages 7–9, reporter's certificate | 6 |
| C | Transcript excerpts, August 13, 2025 hearing, Florida Action No. CACE-22-005125: pages 1, 2, 25, 26, 44, 45, 139 | 7 |
| D | Order, *In re Auto Wholesale of Boca, LLC*, No. 22-15627-EPK (Bankr. S.D. Fla. Aug. 27, 2025), ECF No. 965 | 3 |

# EXHIBIT A

Common Interest Agreement, effective as of March 7, 2023, between Franklin Capital Funding, LLC and Nicole Testa Mehdipour, as Chapter 7 Trustee of Excell Auto Group, Inc. (4 pages)

*to the Certification of Avrumi Lubin in Support of Motion to Consolidate*

# COMMON INTEREST AGREEMENT

THIS COMMON INTEREST AGREEMENT (the "Agreement") is entered into by and among the undersigned counsel, effective as of March 7, 2023, acting for and on behalf of their respective clients, Franklin Capital Funding, LLC ("Franklin") on one hand, and Nicole Testa Mehdipour, as Chapter 7 Trustee of Excell Auto Group, Inc. (the "Trustee") on the other hand. Franklin and the Trustee may be referred to collectively herein as the "Parties" and each individually as a "Party".

WHEREAS, on April 8, 2022, Excell Auto Group, Inc. (the "Debtor") filed a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, in the United States Bankruptcy Court for the Southern District of Florida, Case No. 22-12790-EPK (the "Case");

WHEREAS, the Trustee is the duly appointed and acting chapter 7 trustee of the Debtor in the Case; and Franklin is a creditor of the Debtor and has filed proofs of claim in the Case;

WHEREAS, the Trustee and Franklin each asserts cause of action against Hi Bar Capital, LLC and Spin Capital, LLC, and their respective principals, agent, members, officers, directors, and employees" arising from or otherwise relating to the Debtor and the Case (collectively, the "Claims");

WHEREAS, the Parties share an interest in the prosecution of the Claims, and wish to pursue their separate but common interests and to avoid any suggestion of waiver of the confidentiality of privileged communications or documents.

NOW, THEREFORE, in light of the foregoing, and in consideration of the mutual promises and covenants of the Parties contained herein, as well as other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Recitals** - The above recitals are true and correct, and are incorporated into this agreement by reference.

2. **Definition of Counsel** - For purposes of this Agreement, the term "Counsel" means and includes counsel for the Parties, and execution of this Agreement binds that Party and all counsel retained to provide legal services in connection with the Claims at any time.

3. **Claims Materials** - The Parties and Counsel have concluded that it is in each of their individual and mutual best interests in the prosecution of the Claims to share certain information related to that prosecution with some or all of the Counsel and/or the Parties in writing and/or orally. These communications may include but are not limited to written communications, the disclosure of documents, factual and legal analyses, summaries, and memoranda, opinions, legal strategies, interview reports and reports of experts, consultants or investigators, joint meetings between Counsel, the Parties, their representatives and employees, and any meetings with prospective witnesses or consulting experts or litigation support service providers in connection with the litigation in person, by telephone or in any other form, and records or reports of such communications, all of which are included within the term "Claims Materials" used herein.

However, nothing in this Agreement shall be construed to affect the separate and independent representation of each client by its respective Counsel.

4. **Common Interest** - The Parties and Counsel agree that all sharing and pooling of information pursuant to this Agreement will be done within the context of and in furtherance of the Parties' common goal and effort in prosecuting the Claims.

5. **Privileged Communications** - Some or all of the Claims Materials may be protected from disclosure to adverse or other Parties as a result of the attorney-client privilege, the work product doctrine, or other applicable privileges, protections or immunities. It is the desire, intention, and mutual understanding of the Parties hereto (a) that the sharing of Claims Materials among one another is not intended to, and shall not, waive or diminish in any way the confidentiality of such materials or their continued protection under the attorney-client privilege, the work product doctrine or other applicable privileges, protections or immunities; and (b) that all Claims Materials provided by a Party pursuant to this Agreement that are entitled to protection under the attorney-client privilege, the work product doctrine or other applicable privileges, protections or immunities, shall remain entitled to such protection under the common interest doctrine, and may not be disclosed to persons other than those described in Paragraph 6 without the prior written consent of the providing Party in the manner described in Paragraph 8. The Parties also intend and understand that any disclosure of Claims Materials pursuant to this Agreement will not constitute a waiver of any available privilege, protection or immunity.

6. **Disclosure of Claims Materials** - Each of the undersigned Counsel has further agreed that he or she will not disclose any exchanged Claims Materials received by him or her from another Party to this Agreement or Counsel for another Party to this Agreement to anyone except Counsel of record for any Party to this Agreement and paralegals, support staff, or experts who are directly employed by or retained by and assisting Counsel in the prosecution of the Claims. All persons permitted access to Claims Materials (collectively, "Authorized Persons") shall be specifically advised that the Claims Materials are privileged and subject to the terms of this Agreement.

7. **Previously Exchanged Claims Materials** - All Claims Materials exchanged between and among any of the Counsel pursuant to prior oral agreements or any previous common interest agreement are now subject to this Agreement. This Agreement specifically preserves the protections afforded to those materials shared between the Parties from the time that the commonality of interest came into being until execution of this Agreement under the same terms as contained in this Agreement.

8. **Privilege Not Waived** - The privileges and protections for the Claims Materials to which this Agreement is applicable may not be waived by any Party to this Agreement without the prior written consent of the Party that provided the Claims Materials. Any inadvertent or purposeful disclosure of Claims Materials exchanged pursuant to this Agreement that is made by a Party contrary to the terms of this Agreement shall not constitute a waiver of any privilege or protection. If any Party is required by court order or rule of law to produce or reveal any confidential information, documents or privileged materials which are part of the Parties' efforts pursuant to this Agreement, reasonable notice shall be given to each Party who has executed this Agreement before responding to, or complying with, such requests so that any Party may, at its

own cost, have the opportunity to resist the production of such information by timely and appropriate process. In the event the Party from whom disclosure is sought has no objection to the disclosure, such Party shall nevertheless invoke this Agreement during the pendency of any action taken by the objecting Party and shall otherwise make reasonable efforts to prevent disclosure until the final resolution of the objection of the objecting Party.

9. **Withdrawal** - In the event that a Party determines that it no longer has a commonality of interest in the prosecution of the Claims, such Party shall withdraw from this Agreement. Each undersigned Counsel has a duty to withdraw from the Agreement when, in good faith, he or she reasonably believes that a commonality of interest no longer exists and to give prompt written notice of such withdrawal to each of the undersigned. Notwithstanding a Party's withdrawal, this Agreement shall remain operative as to: (a) all other remaining Parties to this Agreement; and (b) all previously furnished Claims Materials. Any Party may withdraw from this Agreement on written notice to all of the undersigned Counsel. Any such withdrawal will be solely on a prospective basis and any Claims Materials provided pursuant to this Agreement prior to such withdrawal shall continue to be governed by the terms of this Agreement.

10. **Settlement or Dismissal** - A party who is dismissed or settles all pending Claims will be deemed to have withdrawn from the Agreement in accordance with terms of paragraph 9 as of the date of the dismissal or settlement.

11. **Additional parties** - The Parties recognize that other counsel and their clients may be permitted to join this Agreement at a future time by signing a copy of this Agreement. Any such additions shall be made only with the permission of all then-current signatories to this Agreement.

12. **No endorsement or authorization** - While the undersigned Counsel believe that their clients are well served by the sharing of information under this Agreement, they also understand that participation in this Agreement represents neither an endorsement of, nor an authorization to control, strategy or decisions of other participating counsels' clients.

13. **Independent work product** - Nothing in this Agreement shall limit the right of any Party to use or disclose any documents or information or work product that have been independently obtained or generated by such Party (*i.e.*, they were not obtained or generated as part of the common interest efforts made pursuant to this Agreement), whether or not such documents, information or work product have been provided to any other Party pursuant to this Agreement.

14. **Scope of Protection** - This Agreement shall be interpreted so as to afford the broadest and greatest protection possible of Claims Materials from disclosure to third parties.

15. **No Attorney-Client Relationship** - Nothing in this Agreement is intended to create any attorney-client relationship for the purposes of conflicts or otherwise. Each undersigned Counsel understands that it is his or her sole responsibility to represent his or her or their respective client(s) and that none of the other signatories to this Agreement have in any way assumed any such responsibility. Moreover, the participation in, execution or receipt of any information

pursuant to this Agreement shall not disqualify any representative of a signatory (including a law firm) from accepting any other future engagement.

16. **No Admission of Liability** - Nothing in this Agreement is intended as, nor shall be construed or deemed to be, an admission of liability by any Party, or of the existence of facts upon which liability could be based.

17. **Counterparts** - This Agreement may be signed in counterparts. All executed counterparts shall comprise the entire Agreement. This Agreement may be executed by Counsel for a Party. Each Counsel signing this Agreement represents that he or she has been authorized by his or her client to execute this Agreement on behalf of the client.

IN WITNESS WHEREOF, the Parties have executed this Agreement below.

Shraiberg Page P.A.

By: ______________________
Bradley Shraiberg, Esq.
Counsel for Franklin Capital Funding, LLC

Furr and Cohen P.A.

3/8/2023

By: ______________________
Alan Crane, Esq.
Counsel for Nicole Testa Mehdipour, as Chapter 7 Trustee of Excell Auto Group, Inc.

# EXHIBIT B

Transcript excerpts, April 22, 2022 hearing, No. CACE-22-005125 (Fla. 17th Cir. Ct.), as filed May 4, 2022 (Filing # 148965863): notice of filing, title page, pages 7–9, reporter's certificate (6 pages)

*to the Certification of Avrumi Lubin in Support of Motion to Consolidate*

**IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA**

CASE NO.: CACE-22-005125

FVP OPPORTUNITY FUND III, LP, a Delaware Limited Partnership; FVP INVESTMENTS, LLC, a Delaware Limited Liability Company; AND FVP SERVICING, LLC, a Delaware Limited Liability Company,

Plaintiffs,

vs.

KARMA OF BROWARD, INC., a Florida corporation; KARMA OF PALM BEACH, INC., a Florida corporation; SCOTT ZANKL, an individual; KRISTEN ZANKL, an individual; MOSHE FARACHE, an individual; AUTO WHOLESALE OF BOCA, LLC, a Florida limited liability company; MMS ULTIMATE SERVICES, INC., a Florida corporation; EXCELL AUTO SPORT AND SERVICE, INC., a Florida Corporation; and EXCELL AUTO FINANCE, LLC, a Florida Limited liability company,

Defendants.
______________________________________/

**NOTICE OF FILING**

Defendants, MOSHE FARACHE, AUTO WHOLESALE OF BOCA, LLC and MMS ULTIMATE SERVICES, INC. ("Defendants"), by and through undersigned counsel, hereby file this Notice of Filing of ***Hearing Transcript of April 22, 2022 on Plaintiffs' Renewed and Restated Emergency Motion for Appointment of Receiver and Motion for Rule to Show Cause in Contempt for Fraud Upon the Court*** in support of Defendants' Emergency Motion for Status Conference, Or in the Alternative, Motion to Stay Entry of Order to Show Cause filed on May 2, 2022.



*** FILED: BROWARD COUNTY, FL BRENDA D. FORMAN, CLERK 05/04/2022 03:49:43 PM.****

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO. CACE-22-05125

FVP OPPORTUNITY FUND, III, LP,a Delaware limited partnership; FVP INVESTMENTS, LLC, a Delaware limited liability company; and FVP SERVICING, LLC, a Delaware limited liability company,

Plaintiffs,

vs.

KARMA OF BROWARD, INC., a Florida corporation; KARMA OF PALM BEACH, INC., a Florida corporation; SCOTT ZANKL, an individual; KRISTEN ZANKL, an individual; MOSHE FARACHE, an individual; AUTO WHOLESALE OF BOCA, LLC, a Florida limited liability company; MMS ULTIMATE SERVICES, INC., a Florida corporation; EXCELL AUTO SPORT AND SERVICE, INC., a Florida corporation; and EXCELL AUTO FINANCE, LLC, a Florida limited liability company,

Defendants.

_______________________________________________/

Broward County, Florida
April 22, 2022
1:33 p.m. - 2:30 p.m.

Pursuant to notice, the above-entitled case came on for hearing before the Honorable MICHELE TOWBIN SINGER, Circuit Judge, and the proceedings were stenographically reported via videoconference by Andrea Frias, Certified Court Reporter.

-------------

MR. CRANE: I'm the attorney for Nicole Testa Mehdipour who is the trustee for Excell Auto Group.

MS. MEHDIPOUR: Good afternoon, Your Honor. Nicole Testa Mehdipour, the Chapter 7 bankruptcy trustee for Excell Auto Group, Inc.

MR. MULLAVEY: Good afternoon, Your Honor. This is Michael Mullavey on behalf of Roman Tenkin and Natalia Blasova. We're a non party who filed an emergency motion to intervene.

THE COURT: Okay.

MR. FRANCO: Your Honor, this is Xavier Franco. I'm just sitting in, but I'm also with Mike Mullavey.

THE COURT REPORTER: I'm sorry, can you repeat your name.

MR. FRANCO: This is Xavier Franco. I am co-counsel for Roman Tenkin and Natalia Blasova.

THE COURT: Okay. Anybody else?

Okay. Which motion do you want me to hear first?

MR. BRESLIN: Judge, let me --

THE COURT: Hold on. Hold on. Hold on, Mr. Breslin.

MR. MCMULLEN: We respectfully ask that Mr.

Breslin proceeds first, and then when Your Honor is ready to hear our motion, Mr. Cohen will do so.

THE COURT: All right. Go ahead, Mr. Breslin.

MR. BRESLIN: Thank you, Your Honor.

Judge, what I wanted to say was we had a hearing before today, and after that hearing certain events occurred that led us to file the renewed and restated emergency motion for the appointment of a receiver.

Since that time and prior to Your Honor scheduling this hearing we have had conversations with the bankruptcy trustee of Excell Auto appointed in Palm Beach, and the trustee is on the zoom.

THE COURT REPORTER: I'm sorry, excuse me. You're freezing up on me. I apologize. I didn't get the last part.

MR. BRESLIN: Okay. What I said was -- and please, thank you for clarifying. When you can't hear me, please let me know.

I represent the FVP Plaintiffs. Okay. The FVP Plaintiffs. We have entered into an agreement with the trustee bankruptcy, the Excell Auto Group bankruptcy for the trust to do everything that we would ask Your Honor appoint a receiver to do.

So since the trustee has agreed to undertake that action and collect and safeguard the vehicles that we asked that Your Honor enter an order on last week, they -- she's now agreed -- we've entered into an agreement with her. And we don't believe we need the receiver now, because they would both be doing the same thing and there would be a cross purposes.

So we would announce that we would at this time withdraw our motion for appointment of receiver without prejudice, and just ask that Your Honor take up the motion for rule to show cause.

THE COURT: All right. Thank you very much. Thank you.

Okay. Then let's hear the motion for rule to show cause.

MR. COHEN: Thank you, Judge.

Judge, we filed a motion for the Court to issue an order for a rule to show cause. As you know last Thursday we were before Your Honor, and there was various arguments before Your Honor. There was a lot of representations made.

In fact, there was an affidavit that was filed. The affidavit, although improper, it was --

CERTIFICATE

STATE OF FLORIDA

COUNTY OF BROWARD

I, ANDREA FRIAS, Certified Court Reporter,

DO HEREBY CERTIFY that the foregoing hearing was taken via videoconference at the time therein designated; and the foregoing pages 1 through 49 inclusive are a true and correct record of the proceedings.

I FURTHER CERTIFY that I am not a relative or employee of any of the parties, nor relative or employee of such attorney or counsel, or financially interested in the foregoing action.

DATED this 2nd day of May, 2022, County of Broward, State of Florida.

Andrea Frias

ANDREA FRIAS, Court Reporter

# EXHIBIT C

Transcript excerpts, August 13, 2025 hearing, No. CACE-22-005125 (Fla. 17th Cir. Ct.): pages 1, 2, 25, 26, 44, 45 and 139 (7 pages)

*to the Certification of Avrumi Lubin in Support of Motion to Consolidate*

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

Case No. CACE-22-005125

FVP OPPORTUNITY FUND III, LP, A DELAWARE LIMITED PARTNERSHIP; FVP INVESTMENTS, LLC, A DELAWARE LIMITED LIABILITY COMPANY; AND FVP SERVICING LLC, DELAWARE LIMITED LIABILITY COMPANY,

Plaintiffs,

vs.

KARMA OF BROWARD, INC., a Florida corporation, et al.,

Defendants.

_______________________________________/

HI BAR CAPITAL, LLC, a New York limited liability company, et al.,

Plaintiff,

V Case No. CACE-22-06401

KARMA OF PALM BEACH, INC., a Florida corporation, et al.,

_______________________________________/

Judge David Haimes
Broward County Courthouse
201 Southeast Sixth Street, 17150
Fort Lauderdale, Florida 33301
August 13, 2025
1:30 p.m. to 4:50 p.m.

ALL PENDING MOTIONS and MOTION FOR SUMMARY JUDGMENT

Reported By:
Cheryl L. Jenkins, RPR, RMR

APPEARANCES:

SCHWARTZ BRESLIN, by
JERRELL "JERRY" BRESLIN, Esquire
and
BUSCHEL GIBBONS, by
ROBERT BUSCHEL, Esquire
and
COHEN & MCMULLEN, by
MICHAEL MCMULLEN, Esquire
BRADFORD COHEN, Esquire
and
JONATHAN SCHWARTZ, Esquire (via Zoom)
On behalf of the Plaintiffs, FVP Opportunity Fund III, LP, a Delaware Limited Partnership; FVP Investments, LLC, a Delaware Limited Liability Company; and FVP Servicing LLC, Delaware Limited Liability Company

KATZMAN WASSERMAN BENNARDINI & RUBINSTEIN, by
CHARLES BENNARDINI, Esquire
and
SCOTT C. GHERMAN, P.A., by
SCOTT GHERMAN, Esquire (via Zoom)
On behalf of the Defendants,
Lisa Farache, Moshe Farache,
1001 Clint Moore, LLC/Auto Wholesale of Boca

LETO LAW FIRM, by
MATTHEW LETO, Esquire
On behalf of the Defendant, Hi Bar

SHRAIBERG PAGE, by
PATRICK DORSEY, Esquire
On behalf of Franklin Capital Funding
and Franklin Capital Group

of which haven't been disclosed to anybody.

I'm not exactly sure how your Honor can endorse a settlement agreement without knowing the terms of that --

THE COURT: Wouldn't the bankruptcy -- you'd have to let the bankruptcy court know, right? Unless it's not -- is it confidential?

MR. BRESLIN: Judge, the agreement is not confidential. The agreement has resolved the issue between Hi Bar and Franklin, and we've notified the bankruptcy court that the matter is resolved, and we're notifying your Honor that the matter is resolved. I'm happy to supply a copy of the settlement agreement to your Honor, but that's never been an issue.

Mr. Lubin is saying, Mr. Lubin is not --

THE COURT: Hang on.

So as far as the percentages of the 2 million plus that's in the bankruptcy, you're not willing to put that on the record as to what each has?

MR. BRESLIN: Well, it's --

THE COURT: Is it supposed to be confidential?

MR. BRESLIN: Well, the settlement agreement is, 100 percent of the money in the bankruptcy court is going to the FVP parties.

THE COURT: Okay, and then what does Franklin and Hi Bar get out of it?

MR. BRESLIN: Franklin, we have a separate agreement with Franklin, and they share the FVP proceeds, and what Hi Bar is getting is there's a release of claims against the individual members.

Don't forget, Judge, we're suing Yisroel Herbst for $7.5 million, just like we're suing Mr. Lubin for $7.5 million.

THE COURT: Okay.

MR. BRESLIN: So there's a release of Mr. Herbst, and there are other terms and conditions in there.

THE COURT: All right, and as far as Franklin goes?

MR. BRESLIN: Franklin gets its share of the bankruptcy proceeds pursuant to a separate agreement with FVP.

THE COURT: Okay.

MR. KASEN: Your Honor, what the parties are intending to do here is cut off any rights that Lubin may have to those funds, and (inaudible) them beyond his reach by cutting Hi Bar out of that --

THE COURT: No, I understand that, but -- of course that's what they're trying to do, and the question

MR. LETO: There's no confidential --

MR. BRESLIN: I have no objection. I think he's entitled to see it.

THE COURT: All right. So Mr. Kasen, your client will get a copy of the settlement.

MR. KASEN: And all related settlement agreements, because the (inaudible) --

THE COURT: Well --

MR. KASEN: -- one settlement agreement that puts all the money to FVP, then there are separate settlement agreements between the FVP parties and the Franklin parties, and separate settlement agreements then between the FVP parties and Hi Bar parties.

MR. LETO: There's only one agreement with Hi Bar, your Honor.

THE COURT: All right. I guess the starting point will be the settlement agreement between the three parties, which includes Hi Bar. If there's a separate settlement agreement, I have no -- first of all, is there an objection to turning that over?

MR. BRESLIN: Judge, the Franklin parties and FVP have a common interest agreement, and in that common interest agreement is a blanket agreement. So that would apply to any of these funds.

MR. LANGLEY: But FVP --

THE COURT: And is that confidential?
MR. BRESLIN: Well, it's stated as confidential. No one has ever moved to produce it.
THE COURT: All right. I would defer that one for another day then.
MR. BRESLIN: Right, thank you.
MR. LETO: We'll provide the Hi Bar settlement.
THE COURT: All right.
MR. BENNARDINI: Can the Farache --
MR. LANGLEY: Thank you, Judge.
MR. BENNARDINI: Can the Farache defendants get a copy of that, too, please, Judge?
MR. LETO: I will send it to you.
MR. BENNARDINI: Thank you.
MR. BRESLIN: I'm glad that was the easy one, Judge.
(Laughter.)
THE COURT: Yeah, I jinxed myself.
MR. BRESLIN: Let's move on to the tougher ones.
THE COURT: All right. So that takes care of the -- well, that takes care of the trial then as well, as long as --
MR. BRESLIN: It takes care of --

CERTIFICATION

STATE OF FLORIDA :
COUNTY OF MIAMI-DADE :

I, Cheryl L. Jenkins, RPR, RMR, Shorthand Reporter and Notary Public in and for the State of Florida at Large, do hereby certify that the foregoing proceedings were taken before me at the date and place as stated in the caption hereto on page 1; that the foregoing computer-aided transcription is a true record of my stenographic notes taken at said proceedings.

WITNESS my hand this 18th day of August, 2025.

CHERYL L. JENKINS, RPR, RMR

Court Reporter and Notary Public
in and for the State of Florida at Large
Commission #HH 170910
December 27, 2025

# EXHIBIT D

Order, *In re Auto Wholesale of Boca, LLC,* No. 22-15627-EPK (Bankr. S.D. Fla. Aug. 27, 2025), ECF No. 965 (3 pages)

*to the Certification of Avrumi Lubin in Support of Motion to Consolidate*

**ORDERED in the Southern District of Florida on August 27, 2025.**

Erik P. Kimball
Chief United States Bankruptcy Judge

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

**In re:**

**AUTO WHOLESALE OF BOCA, LLC,** | **Case No. 22-15627-EPK**

**Debtor.** | **Chapter 7**

_______________________________________/

**ORDER (I) GRANTING EXPEDITED JOINT MOTION TO ORDER DISTRIBUTION OF AUCTION PROCEEDS TO COUNSEL FOR THE FVP PARTIES PURSUANT TO STATE COURT ORDER, AND (II) DISCHARGING ORDER TO SHOW CAUSE**

THIS MATTER came before the Court for hearing on August 27, 2025 on the *Expedited Joint Motion to Order Distribution of Auction Proceeds to Counsel for the FVP Parties Pursuant to State Court Order* (Dkt. No. 954, the "Motion"), and the *Order to Show Cause Why Certain Funds Held by the Clerk Should Not Escheat to the United States Treasury* (Dkt. No. 911). In the Motion, Franklin Capital Funding, LLC; Franklin Capital

Case 22-15627-EPK Doc 955 Filed 08/27/25 Page 2 of 3

Group, LLC; Franklin Capital Management, LLC; FVP Opportunity Fund III, LP; FVP Investments, LLC; FVP Servicing, LLC; and Hi Bar Capital, LLC (together, the "Movants") ask the Court to direct, pursuant to a settlement among the Movants, the release of certain funds held in the registry of the Court.

The history of this matter is set forth in detail in the Court's *Order Denying Expedited Joint Motion* (Dkt. No. 952), which is incorporated here in full. Capitalized terms have the meanings given in that order. The Court ruled that it could not and would not rule on the dispute between Avrumi Lubin and Hi Bar Capital, LLC regarding their relative rights in the Net Proceeds held in the registry of this Court. The Court encouraged the parties to obtain a ruling from another court having competent jurisdiction. They have done so.

In its *Order on Joint Motion to Endorse Settlement* entered on August 14, 2025 in Case No. CACE-22-005125 (Dkt. No. 954 Ex. A, the "State Court Order"), the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida ruled, among other things, that neither Avrumi Lubin nor any of his affiliated entities have any rights to the Net Proceeds and that the Net Proceeds should be distributed to the trust account of counsel for certain of the Movants consistent with the settlement approved by that court. Following the State Court Order, the Movants are the only parties who may seek release of the Net Proceeds consistent with the Sale Order.

In light of the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. The *Expedited Joint Motion to Order Distribution of Auction Proceeds to Counsel for the FVP Parties Pursuant to State Court Order* (Dkt. No. 954) is GRANTED as provided herein.

2. The Clerk is DIRECTED to disburse the Net Proceeds currently held in the registry of the Court, in the amount of $2,107,548.61 plus accrued interest (if any), to the

Case 22-15627-JPK Doc 915 Filed 08/27/25 Page 3 of 3

order of the law firm Schwartz Breslin PLLC, to be further disbursed according to the settlement approved by the State Court Order.

3. Schwartz Breslin PLLC must contact the Financial Section to obtain the AO 213P form required for disbursement.

4. Any and all objections are OVERRULED.

5. The *Order to Show Cause Why Certain Funds Held by the Clerk Should Not Escheat to the United States Treasury* (Dkt. No. 911) is DISCHARGED.

###

Copy to:

Patrick Dorsey, Esq.

*Attorney Patrick Dorsey is directed to serve a conformed copy of this Order on all appropriate parties and file a certificate of service with the Clerk.*